Chief Justice Robertson
delivered the Opinion of the Court.
ONthe 15th of May, 1833, McCallister & Sanders, associate plasterers, covenanted to plaster, in a prescribed manner, three houses for “P. & J. Chamberlin;” who covenanted on their part, to pay therefor a stipulated price per square yard, in the following manner: first— $275 in a note on J. C. Bucldin, to be assigned by them on request; second — $150 on the completion of the work; third — $150 six months thereafter; scad fourth — the residue in goods from their store. The time of beginning^the work was to be as soon as the carpenters, then working-on the houses, should be “ready.”
After the plastering of one of the houses had been nearly completed, and that of another just begun, Me-Cal-lister and Sanders sent some of their workmen to the third house for the purpose of beginning their work on that also; but the other party, having, for the purpose of ensuring the completion of the whole job within convenient time, employed another mechanic to plaster that house, refused to permit the workmen of McCallister and Sanders to commence working upon it; and thereupon, they abandoned the further prosecution of the work on the other two houses. And on the 26th of November, 1835, they brought this action of covenant to recover damages for an alleged breach of covenant by P. & J. Chamberlin, in their non-payment of the stipulated price for the plastering of the three houses according to their covenant — averring, as an excuse for the non-completion of the work, the fact that they had been prevented, as just stated, from working on one of the houses.
Upon the trial of the case, on an issue on a plea of covenants performed, and on another issue on a plea tra- *353 ' versing an allegation that the work had been commenced within the time prescribed in the covenant for beginning it — the Circuit Judge instructed the jury that; if they should “ believe that the plaintiffs commenced “ the performance of the work covenanted to be done “ on their part, and were prosecuting the same, in good “ faith, but were interrupted and prevented from doing “ the same by defendants, the'law was for'the plaintiffs, “ and they were entitled to the contract price of the work in “ the same manner as if the work had been actually done.”
A dec’ll on a covenant by defendants, to pay, at a certain rate, for work to be dono by the p] tls upon its completion — a part in “go'odsfrom their store,”--averring only that part of the work, was performed, & that the plt’fs were prevented by def ts, from fin ishing it.sbows no cause of action as to the non payment in goods; because it does not aver that the amount of work had been ascertained, and notified to the defendants; or that, on request, they had x-efused to unite in ascertaining it, and had nevertheless, refused, on demand at their store, to deliver the goods; or that they had dispensed with these preliminaries.
And thereupon, though the proof showed that the work actually done amounted to only $459 20, and that the plaintiffs in the action had received from the defendants 68, nevertheless the jury returned a verdict for 32 — the balance of the ascertained contract price for the plastering covenanted to be done on all three of the houses, after deducting the $610 68 which had been paid.
The judgment rendered by the Circuit Court on that verdict against the plaintiffs in error (defendants below) is now brought up for revision.
In our opinion the judgment is erroneous on several grounds.
First. The declaration is essentially defective. According to the contract, a part of the price to be paid for the work, exceeding $500, was to be discharged in goods, without any other designation of the time when that amount should be thus paid, than that the job should be first finished, and the entire contract price of it ascertained, and that then the goods should be delivered upon application. To show a cause of action as to the alleged non-payment in goods, it was necessary, therefore, to allege that the quantity of plastering done, or covenanted to be done, had been ascertained and communicated to the plaintiffs in error; or that, upon proper application, they had refused to concur in acts necessary for ascertaining it, and that nevertheless they had af *354 terwards, upon application at their store, refused to let the defendants in error have such goods as they had selected, of'the value ofthe sum found to be due in goods; or not*ce balance due, or an offer to ascertain it, and an -application for selected goods, had been dispensed with by some act of the plaintiffs in error. The declaration contains no such averment of any kind. And certainly some such averment was as necessary as it could have been had the declaration averred a perfect performance of all the work, instead of averring, as it did, facts intended to excusethe partial non-performance of it.
Covenants, by plaster 3 houses, by the other to rate pei. square Tic Til & terers, having done a portion two of the houses, were about the third, but bythe otherpare ty: upon which of vori”do and bro’t covenant for the whole am't of tenes satisfied consequence of the delinquency pltfs', in commencing on the house the defts had a right to employ another to do that work, as they did, the plaintiffs were not entitled to any verdict; and as the evidence did conduce to prove such delinquency — instructions—not leaving that question to the jury— ‘that if the plaintiffs commenced-the work X c. and were interrupted and prevented from doing-the same by defendants,pit fs had a right-to recover, &c wore erroneous.
In this respect, therefore, the declaration showed no cause of action, even -if the alleged excuse for non-performance of all the work be deemed equivalent, in judgment of law, to actual and full performance.
Second. The testimony authorizes doubt whether the °ffer to commence the plastering of the third house was made as soon as, by the contract, the plaintiffs,in error had aright to expect and require; and it is, therefore, not Gerta’n though the covenant was entire as to the 'three 'houses, they had not a right to rescind it as to house which they employed another mechanic to plaster. But, waiving-this question as uncertain upon t¡le faC£S jq seems to us that, if the jury had been, as perhaps they may have 'been, satisfied that, in consequence qf the delinquency or delay of the defendants in error, the plaintiffs had a right to employ another person 't° plaster the third house, not only no damages should have been assessed against them on account of that house, but the defendants in error, in that event, would have been entitled to no verdict; and may, in fact, have had no sufficient excuse for not completing †}16 work on the other two houses. And therefore it seems to us that the Circuit Judge erred in instructing íury hypothetically to find a verdict for the entire contract price, without regard to the question whether *355 the offer to commence the work on the third house had been made within reasonable time.
Where A cove nants to do cer tain things, e.g. to plaster three houses for B; who covenants to pay him a certain sum therefor; and A fails in the performance, entirely, or in part, being prevented from performing by B, or by B s default, —in which case, B could sustain no action for the non-performance —the sum which A is entitled to-recover, in damages, is the amount of injury he has actually sustained: not what he would .have been entitled to for a full peiformanee.
A proper 'offer to perform a condition prece dent, and a refusal by the other party to accept it, will exonerate the party malting it-from liability for nonperformance But such an offer refused, will not always ’ en. title the party making it to the same action and recovery that-the actual performance would have given him.
When the precedent condition is the execution of a continuous service, the commencement of it is not in fact, nor in judgment of law, a performance; an offer therefore, to begin it, declined by the other party, cannot be regarded as so far equivalent to performance as to entitle the party to that which he was to have by the contract, upon the completion of the service. And— Query — in such case, can theparty making the olfer sue on the covenant? or is not his remedy by action on the case for such damages as he has sustained by the refusal? The court incline to think the action may be maintained on the covenant,-for such damages only, as have actually accrued.
*355 Third. But there is,'in our judgment, a more radical error in this case. If the conduct of the plaintiffs excused the defendants in error for their non-completion of the entire job they had covenanted to perform, and entitled them to an action, still the proper and only legal criterion of recovery was, in our opinion, the actual damage they had sustained, and not necessarily, as decided by the Circuit Judge, the whole price to which they would have been entitled, had they, without prevention or obstruction, plastered, according to contract, the three houses.
It is certainly a well established legal doctrine that an offer, made in good faith and at a proper time, to perform a condition precedent, and a refusal to accept the tender by the party entitled to the benefit of it, will exonerate the party who fnade it from legal liability for nonperformance. And it is also well settled that such an offer and non-acceptance will sometimes authorize the same action and recovery as an actual and exact performance would have enabled the party to maintain. But this is not always the case. In Smith vs. Wilson, 8 East’s Rep. 437, in recognizing the general rules just stated,, Lord Ellenborough. decided that they were not applicable so far as to authorize an action on the contract, by a party offering, to begin the performance of a condition precedent,, when the act tendered (such as to commence a continuous and protracted undertaking,) could not have been considered- a performance had it been accepted, and not rejected; and therefore, he decided.that —on a charter party of affreightment, stipulating for carrying freight safely to a designated port, within a prescribed time, and for a specified price, to be paid on the safe delivery of the freight in port, according to contract, the owner of the vessel could, not maintain an action of covenant for the non-payment of the price, by averring that he offered to commence the voyage within proper time, but was prevented by the delinquency of the freighter. And the reason assigned for .the decision is, that, had the voyage been commenced, it might, *356 nevertheless, have never been completed according to contract, and that, therefore, as the owner was not bound by his contract to pay any thing until a complete performance of the precedent condition, according to the terms of the contract, his covenant to pay on that condition only, had not been broken by non-payment after the owner of the vessel had only offered to do an initiate act which, had it been done, would neither have entitled him to an action, nor amounted to a full performance of the condition, nor authorized the legal deduction that the undertaking when begun, would have been so continued as to have terminated in complete performance. And the Judge said that, by doing the act tendered, the party “ would still only have taken certain “ steps of remote and uncertain effect towards the attain- “ ment of the object and completion of the event necessary to be “ attained and completed, in order to vest a right to the du- “ ty demanded in the party demanding it.”
If this be the true doctrine of the law, in cases in which the thing rendered would not, if accepted, amount to full performance of a precedent condition, either in fact or in judgment of law — then, in this case — as the offer to begin the work covenanted to be done on the third house, would not, had it been accepted, have either amounted to a performance of the work, or authorized the legal deduction that it would have been completed according to contract — an action for breach of covenant could not be maintained; because, on the hypothesis suggested, the precedent condition had not been performed in judgment of law; and therefore, the only remedy would be a special action on the case, for such special damages as the disappointed party had sustained in consequence of the delinquency of the other party, in refusing to permit a commencement of the work.— We are rather inclined to the opinion, however, that, though the offer and refusal in such a case, should not be deemed equivalent to actual performance according to contract, so far as the criterion of recovery might be concerned, yet, as it would show a legal excuse for nonperformance of a precedent condition, it might dispense with the averment of performance, which would other *357 wise be necessary in a declaration; and that thus an action might be maintained on the covenant.
The eases in which a tender of performance of a condition precedent, will equally, with the actual performance of it, enti tie the plaintiif to a debt, or duty, from the defendant, aro generally those in which the condition is the doing of a single act, or the delivery of a thing where, by the tender alone, the def t becomes en titled to the thing tendered; not tl;ose in which the def t, rejecting the tender, acquires no right to the thing tendered, and loses all remedy to enforce the contract in his own favt
But whether the doctrine of Lord Ellenborovgh, as to the right of action on the covenant, be that of the law, or should apply to such a case as this, we shall not now either discuss or definitively decide; because we are satisfied that this point is not indispensable to the decision of this case; for, if an action can be maintained on the covenant, we are clearly of the opinion that it can be maintained only for the recovery of such damages as have actually accrued; and it is not probable that the defendants in error can ever show that they are entitled, on that account, to more than they have already received.
It is frequently said, in general terms, and was virtually decided in Jones vs. Barklay, Doug. 985, and in Hotham vs. The East India Company, 1 Term Rep., 638, and in Marshall vs. Craig, 1 Bibb's Rep., 391, and in other adjudged cases, that, “ where a man, by doing a previous “ act, would acquire a right to a debt or duty, by a ten- “ der to do the previous act, if the other party refuse to “ permit him to do it, he acquires the right as completely “ as if it had actually been done.” And this is undoubtedly true in many, perhaps most, cases. It is generally true in cases in which the tender will entitle the party to whom it was made to the thing tendered, and to the maintenance of an action for it. Thus where a party entitled by contract to a conventional sum of money for a horse, upon the delivery thereof, shall have tendered the horse, according to his undertaking, he may maintain an action for the price, and the other party will still be entitled to the horse in consequence of the tender. In such a case, where the doing of a single act or the delivery of a thing, is a precedent condition, not only is a proper offer to do the act, or tender of the thing, proof that, had it not been rejected, the condition would have been performed, but the rights of the parties then become independent, and available to each of them by action or otherwise; and therefore, in such a case, a tender of performance will, in all respects, be deemed equivalent to actual performance.
*358 But is this rule of law applicable to a case in which the party rejecting a tender, or preventing performance, thereby loses all legal right to enforce the contract in own favor5 or maintain’ any action for the non-performance of the other party? We think not. If, upon a covenant by one party, to build a house for another, for ten thousand dollars, to be paid on the completion of the house, the covenantor shall have offered to commence the work at a proper time, but had been prevented from beginning by the other party, in consequence of a change in his determination, or of his inability to procure the proper materials — can it be the law of the land that the covenantor can recover the ten thousand dollars, in an action of covenant. when the covenantee had neither been benefitted, nor will be entitled to any future performance, or action for non-performance of the work? This we cannot admit. Such a doctrine, if recognized, would afford a new mode of making fortunes, without the expenditure of either labor, time, or money, and would legalize, in many cases, palpable and oppressive injustice, and encourage artifice and studied evasions.
Of what had the covenantor, in the case supposed, just cause to complain? Not, certainly, of the non-payment of the ten thousand dollars; but only of his own disappointment, and of any special loss to which it may .have subjected him. Admit that, contrary to Lord Ellenborough’s opinion, he might maintain an- action on the written contract, for the recovery of damages, and would not be compelled to sue in case for special damage alleged and shown — still, that concession cannot imply that, as a matter of course, he will have a right, either moral or legal, to recover the whole price to which he would have been entitled had he built the house, instead of being prevented from building it. If he could maintain an action of debt on the written obligation to pay the ten thousand dollars, and would, in that form of action, be entitled to recover any thing, he must, of coui’se, obtain a judgment for the amount stipulated to be paid, añd not merely a judgment for such damages as he had actually sustained; and the other party might, in that event, be remitted to a suit in equity, for liquidating the *359 actual damage and enjoining the residue of the judgment.
But, in an action of covenant, the plaintiff" should not recover more damages than he had sustained. So far as he had been wronged, and no further, he should, in that action, be entitled to recover. In such a case, the excuse for non-performance might be deemed equal to actual performance of the precedent condition, so far as to exonerate the party from liability for non-performance, and perhaps so far also, as to enable him to sue on the contract without alleging performance; but it cannot, in any other respect, he equivalent to actual performance; it certainly cannot be so considered so far as the extent of the rights and liabilities of the other party may be involved.
It is well settled, as a general rule, that, in an action of covenant, or assumpsit, as the case may be, for the nondelivery of property at a designated time and place, the vendible value of such property at that time and place, will be the legal criterion of recovery; because, the plaintiff" should obtain that value which would have been his, had the defendant faithfully performed his agreement. But that rule is not universal in its application: being, Hire most rules of law, rational and just, it does not apply, when either reason or justice would be outraged by the application of it. And therefore, it has also been conclusively settled by authority that, when the plaintiff" had paid nothing, nor made any tender — as would be the case whenever he was not bound to pay any thing until some time after the delivery of the property — he shall not be entitled to recover, in an action on the contract, the value of the property, but should be restricted to his actual loss; and that is, generally, the difference between the price he was to give, and the value of the property at the time and place prescribed for the delivery of it.
Is there any essential difference between the principle of that case and of this? We can perceive none. Nor have we seen an adjudged case which has made any discrimination between them as to the criterion of recovery.
*360 In each of them, and as much in the one as the other, manifest injustice would be done by making no exception from a general rule equally inapplicable, in its reason and object, to both of them.
And for this opinion, we have not only the reasons and analogies of the law, as a harmonious system of principles and just practical rules, but also the direct and explicit authority of our predecessors, in the case of Caldwell vs. Reed, Littell's Select Cases; in which it was virtually decided that, when a party to whom a tender had been made, had no remedy on his part, the party who made the tender could not recover, in an action of covenant, more than the damages he had actually sustained; because the Court recognized and established the general principle, that when a party has no remedy for enforcing performance by the other, or for recovering damages for non-performance, in consequence of his own failure to perform some precedent condition, he is not liable, for his delinquency, for more than the dama.ges that resulted from it to the other.
Now, in this case, what pretence of right had the plaintiffs in the action of covenant to demand or expect a verdict for the whole amount to which they would have been entitled, had they plastered the three houses — when they had not finished two and had not touched the third, and when too, if their action be maintainable, the other party could never either compel them to complete the work, or recover any damages for their abandonment of it? There is no reason for it: and, in our judgment, there is no authority which, when rightly understood and applied, will sustain such a pretension. Did they sustain any damage ? Then they were entitled to recover to the extent of that damage; but to no greater extent. As the amount of compensation which they had received exceeded the value of the work they had done, and as,, moreover, they did not attempt to prove any special loss or damage, they were not entitled to recover any thing; and according to the only facts now appearing, they might, therefore, have been well pleased that the other party had made no claim to any restitution. If they had lost any thing of value, in the job, or in time, or *361 preparation, or the loss of any other job, they might complain; but unless there shall have been some such consequential damage, they should have been silent and content.
Wc are clearly of the opinion that, in any state of case, the criterion of recovery is not the contract pi'ice for the work. And therefore, the instruction given by the Circuit Judge was, in that respect, erroneous.
Wherefore, the judgment of the Circuit Court is reversed, and the cause remanded.